**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 19-cv-00458-CMA

JENNIFER DAWN DOLLOFF,

      Plaintiff,

v.

ANDREW SAUL, *Commissioner of Social Security*,

      Defendant.

---

## ORDER AFFIRMING DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS

---

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Jennifer Dawn Dolloff's application for Social Security disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court affirms the decision of the Commissioner.

## I.      <u>BACKGROUND</u>

Plaintiff was born in 1966. (Doc. # 9-2 at 20, 60.)[1] On October 21, 2015, Plaintiff applied for both a period of disability and Social Security Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act and Title XVIII of the Social Security Act (Doc. # 9-5 at 3–7), claiming that she was unable to work due to disability as of

---

[1] All of the exhibits filed at Doc. # 9 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (e.g., Doc. # 9-2) and the page number of that specific exhibit as reflected in the filing before the Court.

June 18, 2015 (*id.* at 3). Both claims were initially denied on February 5, 2016. (Doc. #

9-3 at 3–15.) Subsequently, Plaintiff filed a written request for a hearing on February 25,

2016 (Doc. # 9-4 at 12). That hearing, at which Plaintiff was represented, was held on

October 25, 2017. (Doc. # 9-2 at 14, 57–78.)

On December 7, 2017, Administrative Law Judge ("ALJ") Mark R. Dawson issued

a written decision in which he denied Plaintiff's claims for disability benefits. (Doc. # 9-2

at 14–22.) The ALJ found that Plaintiff had the following severe impairments: (1)

fibromyalgia; (2) chronic fatigue syndrome; (3) headaches/migraine; (4) postural

orthostatic tachycardia syndrome (POTS); (5) hypertensive vascular disease; and (6)

interstitial cystitis. (*Id.* at 16.) However, the ALJ determined that none of these

impairments, singly or in combination, met or medically equaled the severity of one of

the listed impairments in the regulations. (*Id.*) The ALJ then concluded that Plaintiff

retained the residual functional capacity ("RFC") to "perform light work" as defined in 20

C.F.R. § 404.1567(b), "except that [she could] occasionally climb, stoop, kneel, crouch,

and crawl[,]" (*id.* at 17), and could not perform work requiring "the operation of a motor

vehicle, working at heights, or in proximity to dangerous machinery," or requiring her to

"understand, remember, and carry out more than simple instructions, make more than

simple work related to decisions, or adapt to more than routine changes in work

settings." (*Id.*) The ALJ also determined that she could not work in any job that would

expose her "to excessive hot and cold environments or to unusual levels of pulmonary

irritants in the workspace." (*Id.*) Based on these findings, and Plaintiff's age, education,

and work experience, although finding that Plaintiff was unable to perform her past

relevant work, the ALJ concluded that she could perform jobs existing in significant numbers in the national economy. (*Id.* at 20–21.)

Thus, the ALJ concluded that Plaintiff was not disabled during the relevant time period. (*Id.* at 22.) Plaintiff appealed, and the Appeals Council denied her request for review (*Id.* at 2–6), making the ALJ's decision the final decision of the Commissioner of the Social Security Administration ("Commissioner").

## II. <u>STANDARD OF REVIEW</u>

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)–(v); *see also Williams v. Bowen* 844 F.2d 748, 750–52

(10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first

four steps of this analysis. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). "The

burden then shifts to the Commissioner to show that the claimant is capable of

performing work in the national economy." *Id.* While the claimant has the initial burden

of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts

relevant to his decision and to learn the claimant's own version of those facts." *Hill v.*

*Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991). A finding that the claimant is disabled or

not disabled at any point in the five-step review is conclusive and terminates the

analysis. *Morgan v. Colvin*, 68 F. Supp. 3d 1351, 1354–55 (D. Colo. 2014)

(citing *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir. 1991)).

This Court's review of the ALJ's determination is limited to determining

whether the ALJ's decision is supported by substantial evidence and whether the

Commissioner—through the ALJ—applied the correct legal standards. *Wall v. Astrue*,

561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). It requires more than a scintilla, but less than a preponderance. *Wall*, 561 F.3d at 1084. In reviewing the record and the arguments of counsel, the Court does not reexamine the issues de novo, *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1257–58 (10th Cir. 2007).

Second, in addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless."

*Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). The standard for harmless error requires a finding that, considering the evidence before the ALJ, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145; *see also Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010); *Lynn P. v. Berryhill*, No. 17-CV-212-JFJ, 2018 WL 3142937, at *3 (N.D. Okla. June 27, 2018). Where the court "can follow the [ALJ' s] reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

### III.     <u>DISCUSSION</u>

Plaintiff raises four grounds of error in her appeal, all of which depend on the resolution of her main objection—whether the ALJ erred in his RFC assessment. She alleges that the ALJ's RFC determination is flawed because (1) he erroneously apportioned lesser weight to Plaintiff's treating physician Dr. Laura Black, and (2) he erroneously failed to consider Plaintiff's subjective allegations. (Doc. # 14 at 16–22.) Because Plaintiff's remaining objections are predicated on the resolution of the RFC issues, the Court first addresses whether the ALJ erred in his RFC assessment.

**A.     WHETHER THE ALJ IMPROPERLY WEIGHED MEDICAL OPINION EVIDENCE**

**1.     <u>Applicable Law and Regulations</u>**

Prior to steps four and five of the five-step evaluation, the decision maker must establish the claimant's RFC. 20 C.F.R. § 404.1546(c). A claimant's RFC is "the most [the claimant] can still do despite [his] [physical and mental] limitations" that result from his impairment(s) and symptoms. 20 C.F.R. § 404.1545(a)(1). Stated differently, the RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996).

In assessing a claimant's RFC, an ALJ must consider all the medical opinions in the record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Additionally, the ALJ must discuss the weight assigned to opinions of both treating and non-treating sources. *See id.*; *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Indeed, in accord with the Tenth Circuit's *Watkins v. Barnhart* decision, if the ALJ seeks to discount the opinion of a treating physician, he should consider a number of factors in doing so. 350 F.3d 1297, 1301 (10th Cir. 2003). *Watkins* provides a two-step process for considering the opinion of a treating physician. At step one, the ALJ determines whether the treating physician's opinion is entitled to "controlling weight" by assessing whether it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *2). If the ALJ determines that the opinion is not entitled to "controlling weight," he must proceed to the second *Watkins* step, in which he must consider a number of factors outlined in 20

7

C.F.R. §§ 404.1527 and 416.927, and then provide sufficient reasoning for the weight, if any, he assigns the opinion. 20 C.F.R. § 404.1527(c) provides six factors that bear on deciding the weight given to any medical opinion:

> (1) the length of the treatment relationship and the frequency of examination;
>
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
>
> (3) the degree to which the physician's opinion is supported by relevant evidence;
>
> (4) consistency between the opinion and the record as a whole;
>
> (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
>
> (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301; *see also Bustamante v. Berryhill*, No. 18-cv-02110-CMA, 2019 WL 4014309, at *3 (D. Colo. Aug. 26, 2019); *Davis v. Berryhill*, No. 18-cv-00876-CMA, 2019 WL 158075, at *3 (D. Colo. Jan. 10, 2019) (quoting *Watkins*, 350 F.3d at 1301.

While *Watkins* prescribes this two-step process, the ALJ is not required to "apply expressly" all of the *Watkins* factors in deciding what weight to give a treating source's opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258–59 (10th Cir. 2007) (explaining that no law or case requires "an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion" as not every factor will apply in every case) (citing *Watkins*, 350 F.3d at 1300; 20 C.F.R. § 404.1527).

## 2.    The ALJ's Opinion

The ALJ ascribed "great weight" to the opinion of Dr. Parsons (Doc. # 9-2 at 19) and lesser weight to Dr. Black's opinion when formulating Plaintiff's RFC to perform "light work" (*id.* at 20). On January 16, 2016, as a part of Plaintiff's application for disability benefits, Dr. Parsons completed a consultative examination of Plaintiff and conducted several diagnostic tests. (Doc. # 9-9 at 5–21.) As to specific work-related functional limitations caused by Plaintiff's impairments, Dr. Parsons opined that Plaintiff "was able to stand and walk for 2 hours at a time and up to 8 hours per day, could lift and carry 15 pounds frequently and 30 pounds occasionally, could occasionally stoop, kneel, crouch, and crawl, and could rarely climb and balance." (Doc. # 9-2 at 19 (citing Doc. # 9-9 at 2–21)). Further, Dr. Parsons opined that Plaintiff had no limitations as to sitting, manipulative activity, and workplace environmental activities. (*Id.*)

Plaintiff was referred to Dr. Black in July of 2015. Beginning on July 8, 2015, Dr. Black met with Plaintiff on several occasions, including August 19, 2015, October 19, 2016, and September 6, 2017. (Doc. ## 9-7, 9-8, 9-9, 9-13.) It was not until September 7, 2017, that Dr. Black opined as to Plaintiff's functional work limitations and found that Plaintiff has "difficulty working overhead, manipulating small objects, holding things, kneeling, bending, stooping, getting up from a chair, the floor, and out of a tub." (Doc. # 9-13 at 3–4.) Dr. Black also opined that Plaintiff could lift 5 pounds occasionally, 25 pounds infrequently and never more. (*Id.* at 3.) One month after the ALJ issued his decision, on January 10, 2018, Dr. Black completed a "Residual Functional Capacity

Form" for Plaintiff in which she opined that Plaintiff was disabled and would never be able to return to work. (Doc. # 9-2 at 45–50.)

Based on his review of the medical evidence, including Plaintiff's treatment records, the ALJ "granted great weight to the RFC opinion of Dr. Parsons" because his opinion was "consistent with the other evidence of record including the relatively mild examination findings/diagnostics" and the "the relatively conservative, sporadic, and routine medical history." (*Id.* at 19.) The ALJ then apportioned Dr. Black's RFC opinion with lesser weight "in formulating the RFC" because her opinions "conflict[ed] with the relatively mild examination findings, including the evidence showing relatively intact strength, sensory perception, motor function, and gait" and were "not necessarily consistent with the conservative/sporadic/routine treatment history" of Plaintiff. (*Id.* at 20 (citing Doc. # 9-9 at 2–21).) As such, the ALJ concluded that Dr. Black's opinions were "not persuasive." (*Id.*)

### 3.  **Analysis**

As a preliminary matter, Plaintiff suggests that the ALJ failed to apply the "treating physician rules" set forth in the "regulations, [r]ulings, and case law." (Doc. # 14 at 19.) Specifically, Plaintiff contends that the "most that can be said about the ALJ's evaluation of Dr. Black's opinion is that he considered it." (*Id.*) Plaintiff is incorrect.

The ALJ's analysis shows that he followed the *Watkins* two-part test and the factors set forth in § 404.1527(c) in assessing how much weight to attribute to Dr. Black and Dr. Parsons' opinions. (Doc. # 9-2 at 17–20.) First, the ALJ determined that Dr. Black's opinions were not entitled to controlling weight because her opinion that Plaintiff

had extensive functional capacity limitations was unsupported by medical "examination findings and diagnostics." (*Id.* at 18.) In support of that decision, the ALJ reviewed the medical diagnostic and examination findings set forth in Plaintiff's treatment records from her July 8, 2015, August 19, 2015, October 19, 2016, and September 6, 2017 appointments with Dr. Black. (*Id.* at 18–20 (citing Doc. # 9-7 at 82–92; Doc. # 9-8 at 12–13; Doc. # 9-9 at 23–24, and Doc. # 9-13 at 3–14).) He determined that Dr. Black's opinions as to Plaintiff's RFC were not well supported by these medical diagnostic and examination findings because these records reflected that some of Plaintiff's symptoms were improving as a result of treatment and use of medications. (Doc. # 9-2 at 18–19 (citing Doc. # 9-7 at 84 (noting that tramadol and roboxin were helpful at reducing joint paint); Doc. # 9-8 at 12 (identifying some improvement in pain from use of Lyrica and ultram and in orthostatic symptoms from use of florinef); Doc. # 9-9 at 23 (noting that tramadol use will bring pain down to tolerable levels and that compression garments helped orthostatic symptoms and "pain is tolerable"); Doc. # 9-13 at 3–4 (noting that summer 2017 was "unremarkable").) As a result, the ALJ correctly applied the first part of the *Watkins* test. 350 F.3d at 1300 (quoting SSR 96–2p).

As to the second *Watkins* step, the ALJ expressly mentioned 20 C.F.R. § 404.1527 and considered factors such as length of treatment relationship and frequency of examination, nature of the treatment relationship, including the treatment provided, supportability, and consistency, *see* 20 C.F.R. § 404.1527(c)(1)–(4),[2] in giving lesser

---

[2] The ALJ need not explicitly address every factor set forth in 20 C.F.R. § 404.1527(c) because *Watkins* does not require the ALJ to go through a checklist of factors that must be referenced in an opinion, or fear of committing reversible error. *Oldham*, 509 F.3d at 1258–59. Indeed, the

weight to Dr. Black's opinions. (Doc. # 9-2 at 19–20.) In summarizing Plaintiff's medical treatment with Dr. Black, the ALJ observed that the treatment was "conservative, sporadic, and routine" and noted that Plaintiff saw Dr. Black on four occasions where such appointments occurred "approximately once per year for routine maintenance." (Doc. # 9-2 at 18); *see also* (Doc. # 9-7 at 82–92) (July 8, 2015 appointment with Dr. Black); (Doc. # 9-8 at 12–13) (August 19, 2015 appointment with Dr. Black); (Doc. # 9-9 at 23–24) (October 19, 2016 appointment with Dr. Black); (Doc. # 9-13 at 3–4) (September 6, 2017 appointment with Dr. Black). The ALJ also determined that Dr. Black's RFC opinion was neither consistent with the record as a whole nor supported by the available medical evidence and explained why. (*Id.*) Thus, pursuant to 20 C.F.R. § 404.1527(c)(1)–(4) and SSR 96-2p, Dr. Black's opinions received lesser weight. (Doc. # 9-2 at 20.) Similarly, in deciding to give more weight to Dr. Parsons' opinion, the ALJ considered the regulatory factors of supportability and consistency. 20 C.F.R. § 404.1527(c)(3)–(4); (Doc. # 9-2 at 17–20). Accordingly, as a technical matter, the Court concludes that the ALJ applied the correct legal standards in assigning relative weights to the medical opinions.

Plaintiff next argues that the ALJ should have given deference to Dr. Black as she was Plaintiff's treating physician. (Doc. # 14 at 19 (citing *Goatcher v. U.S. Dep't of Health and Human Servs.*, 52 F.3d 288, 289–90 (10th Cir. 1995)).) However, Tenth Circuit case law, including *Goatcher*, illuminate clear parameters and procedures for

Court declines to impose a rigid framework onto the process for considering the opinions of physicians who serve as treating sources. *See Gates v. Colvin*, No. 13-cv-00938-CMA, 2014 WL 1924058, at * 3 (D. Colo. May 13, 2014).

when an ALJ may provide less deference and weight to a treating physician like Dr. Black. *See Goatcher*, 52 F.3d at 289–90; *Daniell v. Astrue*, 384 F. Appx 798, 803 (10th Cir. 2010) ("In general, treating source opinions should be given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.") (internal citations omitted); *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.'") (citing *Watkins*, 350 F.3d at 1300); *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not consistent with other substantial evidence in the record").

In the instant case, the ALJ adhered to these parameters and followed these procedures for determining how much weight to ascribe to Dr. Black's RFC opinion. As set forth above, the ALJ apportioned lesser weight to Dr. Black's RFC opinion by relying on objective medical evidence, considering the record as a whole, and applying the regulatory factors set forth in 20 C.F.R. § 404.1527. Additionally, the ALJ relied on Dr. Parsons' RFC opinion where Dr. Parsons physically examined Plaintiff, conducted spirometry testing, trigger point testing, range of motion testing, and major muscle group testing, and he reviewed x-rays and an internist's expanded examination. (Doc. # 9-2 at 18); (Doc. # 9-9 at 3–20.) The ALJ noted that, during Plaintiff's examination with Dr. Parsons, she was able to sit leaning against the wall, change positions to sitting upright,

lean forward without any difficulty, fully squat and rise without difficulty, and stand up and get on the exam table without difficulty. (Doc. # 9-2 at 18 (citing Doc. # 9-9 at 17–20).) Dr. Parsons also observed that Plaintiff's "[m]ajor muscle group testing revealed 5/5 strength in the shoulders, elbows, hands, wrists, hips, and knees." (*Id.*)

Moreover, the record before the Court demonstrates that, as permitted, the ALJ made a choice between two fairly conflicting views. *Oldham*, 509 F.3d at 1257–58. The ALJ did not dispute that Plaintiff has several impairments that are severe, and that Dr. Black's diagnoses reflect the severity of these impairments. (Doc. # 9-2 at 16, 20.) Dr. Black's diagnoses are similar to Dr. Parsons' diagnoses. (Doc. # 9-9 at 14–15) (Dr. Parsons' January 13, 2016 diagnoses); (Doc. # 9-7 at 85–86) (Dr. Black's July 8, 2015 diagnoses). To this end, the ALJ did not discredit Dr. Black's diagnostic techniques and tests underlying Plaintiff's diagnoses. (Doc. # 9-2 at 20.) However, during Step Three, the ALJ must determine whether those severe impairments limit Plaintiff's functional capacity as to the workplace. 20 C.F.R. § § 404.1545(a), 404.1546(c); SSR 96–8p. This is where the "fairly conflicting views" emerge.

Dr. Black opined that Plaintiff's RFC was extremely limited, so much so that she eventually opined that Plaintiff was totally disabled. (Doc. # 9-2 at 19–20, 45–50; Doc. # 9-13 at 3–4.) Dr. Parsons opined that Plaintiff had moderate functional limitations, none of which included her sitting capacity, manipulative activity, or workplace environment activities. (Doc. # 9-2 at 19–20; Doc. # 9-9 at 21.) The ALJ found that Dr. Parsons' opinion was more persuasive because his RFC opinion was consistent with the available medical evidence, including the relatively mild examination findings,

diagnostics, and "relatively conservative, sporadic, and routine medical history." (Doc. # 9-2 at 19.) On the other hand, the ALJ specifically found that Dr. Black's RFC opinion was inconsistent with Dr. Parsons' "relatively mild examination findings, including the evidence showing relatively intact strength, sensory perception, motor function, and gait." (*Id.* at 20 (citing Doc. # 9-9 at 14–20.) Indeed, the ALJ noted that prior to authoring an RFC opinion, Dr. Black's treatment records omitted objective findings regarding treatment, including conclusions related to functional capacity work restrictions. (Doc. # 9-2 at 18 (citing Doc. # 9-9 at 23).) For example, Dr. Black's first treatment notes contain a functional capacity section that depicts a recital of Plaintiff's own subjective allegations. (Doc. # 9-7 at 84.) In Dr. Black's August 19, 2015 treatment note, there were no "objective findings" completed or conclusions as to how the diagnostics related to functional limitations. (Doc. # 9-8 at 13.) Dr. Black's plan also indicated that Plaintiff should "follow up in 3-4 months or sooner, as needed, and return to the office at least annually." (*Id.*) Yet, Plaintiff did not return to Dr. Black until October 19, 2016. (Doc. # 9-9 at 23.) Dr. Black's October 19, 2016 treatment note reflects no objective findings and the plan indicated that Plaintiff should follow up "in 3-4 months, or sooner, as needed." (Doc. # 9-9 at 23.) But Plaintiff's next appointment with Dr. Black was not until September 6, 2017. (Doc. # 9-13 at 3.) Thus, based on Plaintiff's treatment history with Dr. Black, including what the ALJ considered "relatively mild examination findings" and "conservative/sporadic/routine treatment history," the ALJ was unpersuaded by Dr. Black's RFC opinion. (Doc. # 9-2 at 20.)

Notwithstanding the ALJ's decision to credit Dr. Black's RFC opinion with less weight, he did not completely reject her RFC opinion. (Doc. # 9-2 at 20.) The ALJ found that it was necessary to "reduce the [RFC] to accommodate limitations resulting from" the medical evidence disclosed in this case. (*Id.*) Thus, the ALJ did not *carte blanche* accept Dr. Parson's RFC opinion, but he adopted a blend of the two opinions even though he mostly relied on Dr. Parsons' opinion. *See Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) (concluding that ALJ did not err in declining to fully incorporate examining physician's limitations). To that end, the ALJ found that Plaintiff was capable of performing "light work"[3] with additional limitations as to workplace restrictions.

The Court finds that the ALJ did not err in declining to defer to Dr. Black because that choice was supported by substantial evidence, the ALJ's application of the 20 C.F.R. 404.1527 factors, and the ALJ's determination that Dr. Black's RFC opinion was inconsistent with substantial evidence in the record. *See Goatcher*, 52 F.3d at 289–90; *Robinson*, 366 F.3d at 1082 (citing *Watkins*, 350 F.3d at 1300); *McGoffin*, 288 F.3d at 1252. Indeed, Dr. Parsons' examination findings, the frequency and nature of Dr. Black's treatment, and treatment records from Dr. Black's appointments with Plaintiff comprise "relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's RFC finding. *Consol. Edison Co.*, 305 U.S. at 217. Thus, the medical

---

[3] 20 C.F.R. § 404.1567 defines "light work" as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

evidence relied upon by the ALJ amounts to substantial evidence, and the Court "cannot reweigh the evidence or substitute its judgment for that of the agency." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citing *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987)); *Wall*, 561 F.3d at 1084 (explaining that substantial evidence requires more than a scintilla, but less than a preponderance). Although Dr. Parsons' opinions vary from Dr. Black's, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation and citation marks omitted). Accordingly, substantial evidence justified the ALJ's choice to not defer to Dr. Black.

Plaintiff's last argument as to the ALJ's weight of the medical opinions is that the ALJ improperly relied on his "lay impressions of the medical evidence" in "rejecting Dr. Black's opinion." (Doc. # 14 at 19–20.) Specifically, Plaintiff asserts that the ALJ's consideration of her appearance at appointments "cannot overcome the objective medical evidence supporting [Plaintiff's] claim and Dr. Black's opinions." (*Id.* at 20.) However, Plaintiff misconstrues the ALJ's opinion.

There is no indication that the ALJ relied on his "lay opinions" in deciding to give less weight to Dr. Black's opinion. Moreover, it is permissible for an ALJ to make a credibility judgment. *See McGoffin*, 288 F.3d at 1252 ("Although we may not second-guess an ALJ's credibility judgments, such judgment by themselves 'do not carry the day and override the medical opinion of a treating physician that is supported by the record.'") (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). For the reasons

discussed above, *supra* pp. 10–16, the ALJ's determination that Dr. Black's RFC opinion was inconsistent with the record as a whole demonstrates that the ALJ was not relying on his credibility judgments alone to "carry the day" and "override" Dr. Black's medical opinion. *McGoffin*, 288 F.3d at 1252.

In addition, Plaintiff asserts that the ALJ improperly relied on his lay opinions as to how Plaintiff appeared in doctor visits in discrediting Dr. Black's opinions. (Doc. # 14 at 20.) The Court disagrees with Plaintiff's puzzling attempt to pass off other doctors' observations as the ALJ's own lay opinions. When summarizing his consideration of examination findings, the ALJ noted that **Dr. Black** observed that Plaintiff appeared "pleasant, genuine, cooperative, and in no acute distress" at her July 8, 2015 appointment. (Doc. # 9-2 at 18 (citing Doc. # 9-7 at 85).) The ALJ also considered other doctors' observations of Plaintiff when she attended appointments. *See* (Doc. # 9-2 at 18–19 (citing Doc. # 9-9 at 14 (Dr. Parsons' January 16, 2016 observation of Plaintiff), at 23 (Dr. Black's October 19, 2016 observation of Plaintiff); Doc. # 9-13 at 3–4 (Dr. Black's September 6, 2017 observation of Plaintiff))). These observations are not the ALJ's own lay opinions or speculations about how Plaintiff appeared at these appointments. Rather, the ALJ considered other physicians' observations of Plaintiff, which were based on either Plaintiff's appearance or Plaintiff's relaying of symptoms to these physicians. In any event, the ALJ's decision to apportion less weight to Dr. Black's opinion was not supported solely on the observations of these physicians—let alone the ALJ's lay opinions. Therefore, the ALJ's consideration of Plaintiff's general appearance at her appointments was permissible.

In summary, the ALJ did not err in assigning lesser weight to Dr. Black's RFC opinion. (Doc. # 9-2 at 19–20.) The ALJ discounted Dr. Black's opinion because, *inter alia*: it was not consistent with her own prescribed treatment for Plaintiff and the medical evidence as a whole in this case. (*Id.* at 17–20.) Because the ALJ's decision to discount Dr. Black's RFC opinion was in accordance with regulations and based on substantial evidence, the ALJ did not err in formulating the RFC.[4]

## B. WHETHER THE ALJ PROPERLY WEIGHED PLAINTIFF'S SUBJECTIVE ALLEGATIONS IN ASSESSING HER RESIDUAL FUNCTIONAL CAPACITY

### 1. Applicable Law and Regulations

The decision maker determines a claimant's RFC "based on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), including medical history, reports of daily activities, lay evidence, recorded observations, medical source statements, and **descriptions of "symptoms**, including pain, that are reasonably attributed to a medically determinable impairment," SSR 96–8p (emphasis added). Subjective statements about pain and other symptoms are not sufficient to establish a claimant's disability. 20 C.F.R. § 404.1529(a); SSR 96–7p; SSR 96–4p. This framework has two parts: (1) the decision maker must establish that there is a "medically

---

[4] Plaintiff also decries the ALJ's failure to cite to specific page numbers of exhibits as opposed to the exhibits themselves and hints that such citations render his opinion invalid or incapable of being supported by substantial evidence. (Doc. # 14 at 3 n.5 (citing *Romo v. Colvin*, 83 F. Supp. 3d 1116 (D. Colo. 2015)).) The Court disagrees with Plaintiff's application of Judge Blackburn's decision. In *Romo*, Judge Blackburn recognized that, when the record is concise and plain enough to support the ALJ's decision, general citations to multi-page exhibits will not warrant remand. 83 F. Supp. 3d at 1120 n.4 (citing *Brown v. Colvin*, No. 13-cv-02890-REB, Doc. # 35 (D. Colo. Mar. 11, 2015). In *Brown*, the record reflected over 400 pages. *Id.* The Court finds that the record in the instant case is similarly concise and plain enough to support the ALJ's decision—especially given that most of the exhibits to which the ALJ cites are not voluminous.

determinable impairment that could reasonably be expected to produce [the claimant's] symptoms," 20 C.F.R. § 404.1529(b); and (2) "[w]hen the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [his or her] symptoms," the decision maker must then "evaluate the intensity and persistence of [the claimant's] symptoms" to determine the extent to which the symptoms limit the claimant's capacity for work, 20 C.F.R. § 404.1529(c); SSR 96–7p.

Relevant here, the claimant's own statements about his or her symptoms bear on this analysis:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider **whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence**, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4) (emphasis added). Pursuant to Social Security Ruling 96–7p, "whenever the individual's statements about the . . . symptoms are not substantiated by objective medical evidence, the adjudicator must make **a finding on the credibility of the individual's statements** based on a consideration of the entire case record." SSR 96–7p (emphasis added); *see also Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987) ("Only at this point may the decision maker decide whether he believes the claimant's assertions of severe pain.") "One strong indication of the credibility of an individual's statements is their consistency." SSR 96–7p. The decision maker "must

consider" factors such as "[t]he degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources," "[t]he consistency of the individual's own statements," and "[t]he consistency of the individual's statements with other information in the case record." *Id*.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). "The ALJ enjoys an institutional advantage in making" credibility determinations regarding a claimant's subjective complaints. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). When the ALJ makes credibility determinations based on substantial evidence, "the ALJ's credibility findings warrant particular deference." *White*, 287 F.3d at 910.

**2.** **<u>Analysis</u>**

Plaintiff argues that the ALJ's determination that her subjective statements were inconsistent with the record "are so shortsighted" that he must have misstated "what [Plaintiff] said." (Doc. # 14 at 21.) Moreover, Plaintiff asserts that the ALJ's credibility findings "are inconsistent with the objective medical evidence, which he did not consider." (*Id.* at 22.) Plaintiff also contends that "[n]o medical provider has ever doubted [Plaintiff's] conditions and symptoms." (*Id.*) These arguments are unavailing.

As an initial matter, Plaintiff's assertion that the ALJ failed to consider objective medical evidence is without merit. As the Court has already found, the ALJ properly considered both Dr. Parsons and Dr. Black's medical opinions and followed the requisite regulations, which require assessment of whether medical opinions are supported by and consistent with the record as a whole. Additionally, the Court found that the ALJ's apportionment of weight to each medical opinion was supported by substantial evidence, including Plaintiff's medical records and examinations. *See supra* pp. 12–16. As such, the ALJ did not fail to consider objective medical evidence.

Further, the ALJ explicitly determined that Plaintiff's "subjective complaints" alone cannot be "conclusive evidence of disability" and that her "subjective" complaint that she was "fully disabled" was not consistent with the available medical evidence. (Doc. # 9-2 at 18, 20.) Indeed, Plaintiff's subjective complaints were consistent with Dr. Black's opinions as Dr. Black incorporated Plaintiff's subjective description of her symptoms into her treatment notes. (Doc. ## 9-7, 9-8, 9-9, 9-13.) As such, in formulating Plaintiff's RFC, the ALJ similarly discredited her subjective allegations for the same reasons that the ALJ found that Dr. Black's RFC opinion was inconsistent with the record as a whole and was unsupported by substantial evidence. *See supra* pp. 10–16. It is then clear that the ALJ's credibility determinations as to Plaintiff's subjective allegations were "affirmatively linked" to substantial evidence. *See Kepler*, 68 F.3d at 391. Accordingly, the Court will not second-guess the ALJ's credibility determinations because they are entitled to deference. *White*, 287 F.3d at 910.

Finally, the ALJ did not dispute Plaintiff's subjective allegations to the extent that they related to the severity of her impairments.[5] Indeed, both Dr. Black's and Dr. Parsons' diagnoses confirm as much. But the ALJ was unconvinced of Plaintiff's subjective belief that she is "totally disabled" in the face of substantial evidence supporting the ALJ's RFC finding. *See Consol. Edison Co.*, 305 U.S. at 217. Accordingly, this Court will not upset the ALJ's credibility findings.

## C.    PLAINTIFF'S REMAINING OBJECTIONS

Because the Court has determined that the ALJ did not err in formulating the RFC, Plaintiff's remaining objections lack feasibility.

As to her third objection, Plaintiff contends that, because the RFC is flawed, the ALJ should not have considered the availability of "light work" jobs, and as such, a sufficient amount of available jobs in the economy do not exist. (Doc. # 14 at 22–24.) However, because Plaintiff's RFC is not flawed, the ALJ was entitled to consider the availability of "light work" jobs. *See, e.g.,* 20 C.F.R. § 404.1569; 20 C.F.R. Part 404, Subpart P, App. 2; SSR 00–4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

The merit of Plaintiff's final objection is predicated on the assumption that the ALJ should not have considered the availability of "light work" jobs at Step Five. (Doc. # 14 at 24.) Assuming Plaintiff was unable to perform "light work," Plaintiff asserts that the

---

[5] The Court is not without sympathy for the conditions from which Plaintiff suffers. It is not difficult to imagine how these symptoms, shortness of breath, migraines and headaches, dizziness, and rapid heart rate, can impact Plaintiff's daily life and burden her relationship with her family. *See, e.g.,* (Doc. # 9-7 at 84; Doc. # 9-2 at 73–74). Nevertheless, the applicable standard of review prohibits this Court from reweighing the evidence in the record. *Lax*, 489 F.3d at 1084.

"sedentary work" jobs should also be eliminated because the ALJ failed to reconcile a conflict between the Vocational Expert's testimony as to sedentary jobs and the Dictionary of Occupational Titles. (*Id.* at 24–25.) But as previously discussed, the RFC is not legally deficient and the ALJ was entitled to consider the availability of "light work" jobs. Thus, that the ALJ may have failed to resolve this conflict is of no import to the legal analysis.

Accordingly, Plaintiff's remaining objections do not warrant reversal or remand of the ALJ's decision.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that the ALJ's decision is AFFIRMED. Each party shall bear its own costs and attorneys' fees. It is

FURTHER ORDERED that the Clerk of the Court is respectfully DIRECTED to enter a Final Judgment in favor of the Commissioner.

DATED: April 6, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge